IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 14, 2005 Session

## MICHAEL WILLIAM KWASNIK v. SUSAN MARIE GILLMAN KWASNIK

**A Direct Appeal from the Circuit Court for Hamilton County**
**No. 01-D-2394     The Honorable W. Neil Thomas, III, Judge**

_____

**No. E2004-00781-COA-R3-CV - FILED JULY 8, 2005**

_____

In this divorce case, Husband/Appellant appeals and raises issues involving valuation and division of marital property, rehabilitative alimony, and attorney fees. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3; Appeal as or right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R FARMER, J., joined.

Charles D. Paty of Chattanooga, Tennessee for Appellant, Michael William Kwasnik

Phillip C. Lawrence of Chattanooga, Tennessee for Appellee, Susan Marie Gillman Kwasnik

### OPINION

Michael William Kwasnik ("Husband," or "Appellant") and Susan Marie Gillman Kwasnik ("Wife," or "Appellee") were married on May 24, 1996.[1] This was the second marriage for Mr. Kwasnik and the third marriage for Ms. Kwasnik. No children were born of this marriage. On December 28, 2001, Mr. Kwasnik filed a "Divorce Complaint" against Ms. Kwasnik alleging as grounds inappropriate marital conduct and irreconcilable differences. On May 22, 2002, Ms. Kwasnik filed an "Answer to Complaint for Divorce" alleging that there was no inappropriate marital conduct and that irreconcilable differences did not exists between the parties. Ms. Kwasnik sought dismissal of Mr. Kwasnik's Complaint.

---

[1] There is some dispute in the record as to the exact date and year of the marriage. For purposes of this Opinion, and for the sake of consistency, we will use May 24, 1996, which is the date used by the trial court in its Memorandum Opinion.

On April 3, 2003, Ms. Kwasnik filed a "Counterclaim for Divorce" claiming irreconcilable differences and inappropriate marital conduct on the part of Mr. Kwasnik. The matter was heard by the court sitting without a jury on August 20, 2003. On or about October 6, 2003, the trial court filed its "Memorandum Opinion," which reads, in relevant part, as follows:

> The parties were married in May of 1996, and their principal asset is their home in Cummings Cove. Both parties have placed a value on the house of $445,000.00, and the debt on the home is $295,042.97, leaving a net equity of $149,957.03.
>
>     \*                       \*                     \*
>
> Mrs. Kwasnik began her career as a travel agent and then became a realtor. She originally had an exclusive contract with the builders in Cummings Cove, but no longer has that exclusive listing. She is now in the resale market....
>
>     \*                       \*                     \*
>
> For the year 2003, Mrs. Kwasnik has only earned $7,334.00, and her income and expense statement estimates her income for 2003 to be $3,000.00 per month. Although both parties desire to retain the house, the income and expense statements of each show that neither can afford it. Consequently, the house will be placed on the market and the net proceeds divided equally between the parties.... Mr. Kwasnik will retain his pre-marital Dunlap Industries shares (336) and is awarded the marital shares in the company (98) with Mrs. Kwasnik being awarded the First Volunteer Bank account. Mrs. Kwasnik is also awarded one-half of Mr. Kwasnik's 401K plan and one-half of the post-marital appreciation in the Northwest Mutual Life Insurance policy.
>
> The difficult issue for decision in this case is whether or not Mrs. Kwasnik is to be awarded rehabilitative alimony. If in 2003 she were to earn as much as she did in 2001 and 2002, then the amount of rehabilitative alimony, if any, would be rather small. Upon the other hand, however, if she only earns $3,000.00 per month in 2003 and for the remainder of the year, the rehabilitative alimony will be significantly more. Because of the uncertainty in her position, the Court is in a difficult position in assessing her need. Given this difficulty, the Court will set rehabilitative alimony based upon her historical earnings which, on a net basis, approximates $60,000.00

per year. Rehabilitative alimony will be set at $1,000.00 per month for three years....

A final decree was entered January 19, 2003, which, *inter alia*, provided for some valuations and division of marital property, an award of rehabilitative alimony to Ms. Kwasnik in the amount of $1,000.00 per month for three years (subject to revision based on 2003 income), and further provided:

> 6. The marital residence shall be sold and the net proceeds divided equally between the parties. Said property shall be listed on multiple listings and sold as soon as commercially reasonable and both of the parties shall use their best efforts to sell the property.
>
> In the event the parties cannot agree on the listing agent and/or the selling price at which the property shall be listed, then the Court will choose the listing agent and set the selling price on motion of either party.
>
> If any offer is received and the parties cannot agree on terms or the desirability of accepting the offer as made, the parties may submit, by motion, the offer to the Court for a determination as to whether it should or should not be accepted.
>
> Each of the parties shall sign any documents necessary in order to effectuate a listing, sale or transfer of said real estate.

On December 1, 2003, Ms. Kwasnik filed a "Motion to Alter or Amend, seeking, *inter alia*, an award of attorney's fees, that she be designated the listing agent on the marital residence, and that she be awarded the Black Creek Golf Club membership. On December 18, 2003, Mr. Kwasnik filed a "Motion to Alter or Amend, which reads, in relevant part, as follows:

> 1. To allow [Mr. Kwasnik] a credit of one-half (½) the mortgage payments and one-half (½) the utility payments made by [Mr. Kwasnik] against the alimony awarded to [Ms. Kwasnik] since, August 20, 2003, the date of the final hearing, and until the marital residence is sold. In the alternative, order [Ms. Kwasnik] to pay one-half (½) of the mortgage payments and one-half (½) of the utility payments until the marital residence is sold and for [Ms. Kwasnik] to reimburse [Mr. Kwasnik] one-half (½) of the mortgage and utility payments made since the final hearing in this matter.
>
> *                    *                    *

3. To allow [Mr. Kwasnik] to purchase [Ms. Kwasnik's] interest in the marital residence, for $75,000.00, instead of selling the residence.

4. To reconsider the award of alimony to [Ms. Kwasnik].

\*      \*      \*

6. To award the Black Creek Golf Club membership to [Mr. Kwasnik]. Or in the alternative, award the membership to [Ms. Kwasnik]; but allow a credit of the value of said membership against [Ms. Kwasnik's] interest in the marital residence.

On March 8, 2004, the trial court entered an "Order on Motions to Alter or Amend," which reads, in pertinent part, as follows:

2. The Black Creek Golf Club membership is awarded to [Mr. Kwasnik], and [Ms. Kwasnik] shall receive as an additional credit the sum of $8,500 for her interest in the division and distribution of the sales proceeds of the Residence.

3. [Mr. Kwasnik] shall pay the monthly mortgage payment and the utilities for the Residence pending the sale, and he shall be entitled to a credit of $500 per month from [Ms. Kwasnik's] portion of the sales price of the Residence from August 1, 2003, prorated on a per diem basis until the date of the closing of the sale of the Residence or the purchase by [Mr. Kwasnik] of [Ms. Kwasnik's] interest.

\*      \*      \*

5. The obligation upon [Mr. Kwasnik] to pay temporary and rehabilitative alimony to [Ms. Kwasnik] previously ordered to be paid by the Court will not commence until the sale of the Residence, but it shall continue under the same terms, in the same amount and for the same period of time as originally ordered once it commences.

6. [Ms. Kwasnik] is awarded a portion of her attorney's fees to be paid by [Mr. Kwasnik], and judgment is granted in favor of Phillip C. Lawrence and against [Mr. Kwasnik] in the amount of $6,000, but no execution on this judgment shall issue and no interest shall accrue on

this judgment for a period of one year from the date of the entry of judgment in this case.[2]

Mr. Kwasnik appeals and raises three issues for review as stated in his brief:

> 1. Did the trial court err in granting defendant rehabilitative alimony, or in the alternative, did the trial court err in not granting the plaintiff a credit of $1,500.00 per month against the rehabilitative alimony award for each month that the parties continued to live together after the divorce hearing?

> 2. Did the trial court err in the failure to ascertain a value on the Black Creek Golf membership and its subsequent award to plaintiff?

> 3. Did the trial court err in awarding defendant's attorney fees against plaintiff?

Before turning to the issues, we first note that, since this case was tried by a court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

## Rehabilitative Alimony

Because the amount, if any, and type of alimony to be awarded is within the sound discretion of the trial court in view of the particular circumstances of the case, appellate courts will not alter such awards absent an abuse of discretion. ***Lindsey v. Lindsey***, 976 S.W.2d 175, 180 (Tenn. Ct. App.1997). The factors to be considered in deciding whether to award alimony are contained in T.C.A. § 36-5-101(d)(1)(E) (Supp.2004) and include:

> (i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
> (ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (iii) The duration of the marriage;

---

[2] This same Order also contains the logistics as to how the marital residence is to be marketed and ultimately divided between the parties. On August 10, 2004, the trial court entered a "Consent Order on Plaintiff's Motion to Sell Real Estate and Defendant's Motion for Stay of Judgment," in which, *inter alia*, the parties agreed that Mr. Kwasnik would purchase Ms. Kwasnik's interest in the marital residence in an amount "that will reflect a gross selling price of Four Hundred Ninety Thousand Dollars ($490,000)...."

(iv) The age and mental condition of each party;

(v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(vii) The separate assets of each party, both real and personal, tangible and intangible;

(viii) The provisions made with regard to the marital property as defined in § 36-4-121;

(ix) The standard of living of the parties established during the marriage;

(x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

At the time of the divorce, Ms. Kwasnik was forty-nine (49) years old and Mr. Kwasnik was forty-four (44) years old. Ms. Kwasnik has completed two years of college but is currently not seeking a degree. Mr. Kwasnik received his bachelor's degree. In the years preceding the divorce, Ms. Kwasnik's gross earnings were as follows: $70,000 in 2000, $78,000 in 2001, and $84,000 in 2002. Prior to the divorce, Ms. Kwasnik worked as an on-site real estate agent for the Cummings Cove community where she and Mr. Kwasnik resided. In the same week that Mr. Kwasnik filed for divorce, Ms. Kwasnik's position with the real estate group changed such that her monthly income was reduced to approximately $3,000 per month.

Mr. Kwasnik has been employed by Dunlap Industries, a closely held family corporation, for nearly twenty years. In the years immediately preceding the divorce, his gross earnings were as follows: $134,913 in 2000, $115,161 in 2001, and $94,920 in 2002.

Mr. Kwasnik asks this Court to reverse the trial court's grant of $1,000 per month in rehabilitative alimony to Ms. Kwasnik. Although Ms. Kwasnik has demonstrated an ability to earn substantial income, the change in her employment prior to this divorce has lowered her income dramatically. On the other hand, Mr. Kwasnik's position with his family company is stable and his earnings have remained relatively consistent. We have reviewed the entire record in this case and, considering the specific facts before us in light of the factors set out in T.C.A. §36-5-101(d)(1)(E), we cannot conclude that the trial court abused its discretion in awarding Ms. Kwasnik $1,000 per month in rehabilitative alimony.

**$1,500 Credit**

As set out above in the Orders of the lower court, the division of the marital residence has created some difficulty in this case. Following the divorce hearing on August 20, 2003, both parties continued to reside in the marital residence. Mr. Kwasnik testified that he paid all of the household expenses except for the telephone bill. These expenses, according to his testimony, totaled approximately $3,000 per month. Mr. Kwasnik asked the lower court to award him one-half of those expenses as a credit against his alimony payments. The trial court gave Mr. Kwasnik a $500 credit per month beginning August 1, 2003. On appeal, Mr. Kwasnik asks this Court to first reverse the trial court on the issue of rehabilitative alimony, which we have declined to do (*see supra*). In the alternative, Mr. Kwasnik asks this Court to increase his credit from $500 per month to $1,500 per month. From our review of the record, it appears that the trial court granted the $500 "credit" as a means of equitably dividing the marital property.

Under Tennessee law, although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. ***Bookout v. Bookout***, 954 S.W.2d 730, 731 (Tenn. Ct. App.1997). Thus, an equitable division of marital property need not be an equal division of the property. ***Id***. A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. ***Ford v. Ford***, 952 S.W.2d 824, 825 (Tenn. Ct . App.1997). Guidelines for the equitable division of marital property are set forth in T.C.A. § 36-4- 121(c)(Supp.2004). That statute provides, in relevant part:

> In making equitable division of marital property, the court shall consider all relevant factors including:
> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Having reviewed the statute governing the division of marital property, we now proceed to consider separately each of the properties at issue in this appeal.

From our review of the entire record, it appears that the trial court did make an equitable division of marital property. In light of the overall distribution of marital property in this case, the $500 "credit" awarded to Mr. Kwasnik is equitable. **Valuation of the Black Creek Golf**

## Membership

Mr. Kwasnik next asserts that the trial court did not properly value the parties' membership in the Black Creek Golf Club. We disagree. It is settled law in Tennessee that "[t]he value of a marital asset is determined by considering all relevant evidence regarding value." ***Wallace v. Wallace***, 733 S.W.2d 102, 107 (Tenn. Ct. App.1987) (citations omitted). "The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present." ***Id***. (citations omitted). "Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted." ***Id***. (citations omitted). In this case, the only written valuation of the Black Creek golf membership was introduced by Ms. Kwasnik in her assets and liabilities sheet. Ms. Kwasnik valued that membership at $17,000. Mr. Kwasnik, on the other hand, put forth no proof as to the value of the golf club membership. Consequently, the trial court had only Ms. Kwasnik's proof from which to make its finding. In dividing this piece of marital property, the trial court clearly adopted Ms. Kwasnik's valuation and divided the membership in half, giving the membership to Mr. Kwasnik and giving Ms. Kwasnik an $8,500 credit for same. Since Ms. Kwasnik's valuation was the only one in this record, and since the trial court divided this property directly in half according to that valuation, we cannot find that the trial court erred in either its valuation or in its division of this piece of marital property.

## Attorney Fees

It is well settled that an award of attorney fees constitutes alimony in solido. ***See Herrera v. Herrera***, 944 S.W.2d 379, 390 (Tenn.Ct.App.1996). The decision whether to award attorneys' fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." ***Kincaid v. Kincaid***, 912 S.W.2d 140, 144 (Tenn. Ct. App.1995); *see also* Rule 13(d) Tenn. R. App. P. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d), *see supra*. A spouse with adequate property and income

is not entitled to an award of alimony to pay attorneys' fees and expenses. ***Umstot v. Umstot***, 968 S.W.2d 819, 824 (Tenn. Ct. App.1997); ***Duncan v. Duncan***, 686 S.W.2d 568, 573 (Tenn. Ct. App.1984). These awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, ***Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn. Ct. App.1992), or would be required to deplete his or her resources in order to pay these expenses. ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn. Ct. App.1980). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn. Ct. App.1980); ***Palmer v. Palmer***, 562 S.W.2d 833, 839 (Tenn. Ct. App.1977); ***Ligon v. Ligon***, 556 S.W.2d 763, 768 (Tenn. Ct. App.1977).

In this case, Ms. Kwasnik received approximately $130,000 from the trial court's division of marital property. In the past, she has demonstrated an ability to earn a substantial salary. Taking into account the amount of capital Ms. Kwasnik received in the divorce, her employment record, her age and health, and Mr. Kwasnik's obligation for mortgage payments, etc., pending the sale of the home, we find that she is in a position to pay her own attorney fees in this divorce without substantially depleting her resources. Consequently, we reverse the trial court's order to the extent that it awards Ms. Kwasnik $6,000 in attorney fees.

For the foregoing reasons, we reverse the order of the trial court awarding Ms. Kwasnik $6,000 in attorney fees. The orders of the trial court are affirmed in all other respects. We remand for such further proceedings as may be necessary consistent with this Opinion. Costs of this appeal are assessed one-half to Appellant, Michael William Kwasnik and his surety, and one-half to Appellee, Susan Marie Gillman Kwasnik.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.